935 So.2d 604 (2006)
Renee BRASWELL, Appellant,
v.
A. Glenn BRASWELL, Appellee.
No. 3D06-1268.
District Court of Appeal of Florida, Third District.
August 9, 2006.
Elser, Foster-Morales & Kopco; Greene, Smith McMillan, and Cynthia L. Greene, Miami, for appellant.
Cynthia J. Dienstag, Miami, for appellee.
Before FLETCHER, RAMIREZ, and SHEPHERD, JJ.
*605 RAMIREZ, J.
Renee Braswell appeals an amended order that granted appellee A. Glenn Braswell's "Emergency Motion for Order Allowing the Minor Child to Reside with Father." We reverse because the trial court erred when it allowed the father to proceed on his motion in the absence of an emergency.
This is the nineteenth appellate proceeding dealing with the domestic relations of Renee and A. Glenn Braswell. This one deals with the father's emergency motion, which he filed on January 9, 2006,[1] and in which he requested that the court order the child to reside with him and designate him as the primary residential parent of the parties' minor child. By motion to dismiss, the mother promptly objected to the father's failure to file a proper pleading, citing Florida Family Law Rules of Procedure Rule 12.110, requiring that "proceedings to modify a final judgment in a family law matter shall be initiated only pursuant to rule 1.110(h) and not by motion." The court denied the motion without explanation. At its first scheduled hearing on February 21, 2006, the mother renewed her objection to the proceeding because there was no emergency. The court again denied any relief, explaining that due to its vacation schedule, there would be several hearings that would stretch out past mid-March. Thus, the mother would have ample time to prepare her case.
This is precisely what occurred. The court conducted the hearing over six different sessions. On the second day of the trial, the court referred both parents to be tested for drugs and alcohol. The father tested negative for all substances, and the mother tested positive for cocaine and negative for alcohol. The father introduced affidavits from several personnel who previously worked at the Braswell's residence who described the mother as being consistently drunk and under the influence of cocaine. The father concluded that the mother was not capable of caring for the couple's minor child.
The court held the last hearing on April 17, 2006. The court's order dated May 15, 2006, instructed the mother to make arrangements to be admitted to a hospital for a substance abuse evaluation. The court also ordered the mother to waive her confidentiality rights to the treating doctors' reports and/or discharge summaries, and gave the father temporary custody of the parties' minor child. The court specifically found that there was no showing that the parties' minor child was ever in imminent danger and that the child was not in any dire emergency.[2]
*606 We hold that the court abused its discretion when it treated the father's motion as an emergency and then ordered a temporary modification of custody. There was no evidence in this record of an actual emergency. As in Gielchinsky v. Gielchinsky, 662 So.2d 732 (Fla. 4th DCA 1995), the case relied upon by the trial court, where there was no evidence of an actual emergency, "once the court became apprised of that fact, it should not have proceeded." Id. at 733. Here, it was clear to everyone that this "emergency" was going to be tried over a period of weeks. In fact, it took five months from the date of the father's execution of the affidavit on December 19, 2005, in support of his emergency motion to the date of the court's order modifying custody dated May 15, 2006. Additionally, the court specifically found that there was no showing that the child was in imminent danger. Courts have recognized that an emergency authorizes a court to act on a temporary basis and modify an existing custody judgment. See Smith v. Crider, 932 So.2d 393 (Fla. 2nd DCA 2006)("Generally, a court may not modify a final judgment of dissolution of marriage on a temporary basis pending a final hearing on a petition for modification unless there is an actual, demonstrated emergency. Gielchinsky v. Gielchinsky, 662 So.2d 732, 733 (Fla. 4th DCA 1995). This rule is founded upon the principles of res judicata arising from the entry of a final judgment and upon the due process concerns raised by altering the rights of the parties affected by the judgment."). These cases have also recognized the presence of a real emergency where a child is threatened with physical harm or is about to be improperly removed from the state. The record before us shows that no one treated the circumstances here as an emergency, except to deprive the mother of a proper proceeding by petition, with its concomitant rights to a witness list and discovery. In fact, two principal expert witnesses for the father, Dr. Deborah Mash and Dr. Oren Wunderman, testified with no prior notice to the mother.
It appears that the father's motion was merely a post-judgment attempt to modify custody by way of an emergency motion. He specifically requested in his emergency motion that the court modify custody. Florida law unequivocally requires that dissolution judgment modifications assert any change of circumstances in the form of a petition. See Hagins v. McNeal, 647 So.2d 1052, 1053 (Fla. 5th DCA 1994)(where petitioner sought a change in the status quo, court found that this did not constitute an enforcement of the terms of the dissolution judgment, and instead constituted a modification of the judgment that required the court to consider a change of circumstances by way of a petition). See also Ventriglia v. Vaughan, 623 So.2d 836, 838 (Fla. 2d DCA 1993).
For the reasons stated, we reverse the order on appeal and remand this cause. Because we are reversing on the procedural issue, we need not reach the other issues raised by the mother on appeal. However, on remand, the trial court may again be confronted with the same issues. We thus note that the trial court did not make any factual findings in its order that it would be in the best interest of the child to change the temporary custody of the parties' child to the father. Additionally, neither the trial court nor the father's counsel have cited to any legal authority in support of the order compelling the mother to be admitted to a hospital for treatment.[3] Likewise, we can find no support *607 for ordering the mother to waive her rights as they relate to the confidentiality of the doctors' reports and/or discharge summaries.
Reversed and remanded.
NOTES
[1] His affidavit in support of the motion was dated December 19, 2005hardly consistent with any exigent circumstances.
[2] Paragraph 10 of the order states as follows:

Even though Almon Glenn Braswell, Jr.'s mother was at times impaired when she was caring for her son, there is no showing in the evidence that the young boy was ever in imminent danger. Fortunately for him, Mrs. Braswell always had a nanny or a housekeeper or security guard or some combination of those personnel present at the house to care for Glenn. However, if Mrs. Braswell wishes to continue as the residential parent, she must make a choice between that role and any desire she may have to use alcohol or illicit substances. Because the court does not find that the child in [sic] any dire emergency, there is not a problem in the deferring the commencement of Mrs. Braswell's evaluation for a month until Glenn finishes his current school year. The facts described at trial evidently have gone on for years. On the other hand, this case does present a "real emergency" as that term is used in Gielchinsky v. Gielchinsky, 662 So.2d 732 (Fla. 4th DCA 1995). Having an impaired residential parent, even with a nanny or housekeeper speaking limited English present, is a type of emergency which cannot be countenanced or permitted to be continued long-term by the court.
[3] The only support was suggested by the mother and is contained in chapter 397 of the Florida Statutes, but there was no attempt to follow such statutory authority. The father argues that the mother simply should disobey the court's order, hardly a viable option.