951 So.2d 980 (2007)
Carlos CUARTAS, Appellant,
v.
Norevely CUARTAS, Appellee.
No. 3D06-389.
District Court of Appeal of Florida, Third District.
March 14, 2007.
*981 Perez-Abreu & Martin-Lavielle and Andy W. Acosta, Coral Gables, for appellant.
Norevely Cuartas, in proper person.
Before FLETCHER, SHEPHERD, and SUAREZ, JJ.
SHEPHERD, J.
The former husband, Carlos Cuartas, appeals from an order denying his Motion for Contempt and for Immediate Change of Primary Residence on the sole ground that the motion failed to comply with Florida Family Law Rule of Procedure 12.110.[1] Because the former wife agreed to try the matter before a general magistrate and only raised the procedural deficiency in exceptions filed after suffering an adverse magistrate's decision on the merits, we conclude that she waived her right to insist upon compliance with Rule 12.110 by the former husband. Accordingly, we reverse the order on appeal and remand with directions to the trial court to adopt and ratify the general magistrate's report recommending that the former husband be designated the primary residential parent of the couple's now fourteen-year-old minor child.

FACTS
The couple's marriage was dissolved on July 15, 1998. Pursuant to the Marital Settlement Agreement, the former wife, Norevely Cuartas, was designated the primary residential parent of the couple's child with shared parental responsibility and extensive contact between the child and the former husband. Since then, the former wife willfully has refused to cooperate with the former husband, necessitating frequent, continuing judicial intervention.
After years of conflict, on May 15, 2004, the former husband filed a petition for modification of the final judgment to have himself designated primary residential parent for the minor child. An evidentiary hearing followed in which the former wife elected to participate pro se. On February 28, 2005, the trial court denied the petition, finding that "while the court concludes that it does have the authority under the statute and cases relied on by the Petitioner to modify custody, it is not found that a modification of custody would be in the best interest of the child at this time." (emphasis added). The court went on to identify numerous areas in which the former mother "need[ed] improvement in permitting the father to participate in shared parental responsibility," specifically cautioning as to one of them, that "if she does not comply with this court's orders . . . the court may find it necessary in the future to modify residential custody." The court made it clear that its denial was "without prejudice" to the former husband to "renew[] the petition in the future should that become necessary."
Just a few months later, on June 2, 2005, the former husband filed his "Motion for Contempt and for Immediate Change of Primary Residence," alleging non-compliance with the February 28 order, and seeking immediate relief. This time, the former wife consented to have the matter considered by a general magistrate pursuant *982 to Florida Family Law Rule of Procedure 12.490. The magistrate held an evidentiary hearing on the motion on June 7 and July 26, 2005. The former wife again proceeded pro se and with full knowledge of the potential consequences.[2] At no time did she object to the motion on the ground that it failed to comply with Florida Rule of Family Procedure 12.110.
At the conclusion of the July 26 hearing, the magistrate orally announced her intention to recommend a change of primary residence. Her oral pronouncement was followed on October 19, 2005, by a detailed written report and recommendation, which fully chronicled the former wife's transgressions and confirmed the recommended change. Anticipating the written report, the former wife immediately retained counsel. The exceptions subsequently filed only perfunctorily challenged the report on the merits, but for the first time challenged the title of the former husband's motion on the ground that it failed to comply with Florida Family Law Rule of Procedure 12.110. At a subsequent hearing on the exceptions, the trial court, in its review capacity, found that ample evidence existed to sustain the general magistrate's recommendation, but nevertheless declined to adopt the report on the sole ground that the former husband's "initial pleading was a motion for change of custody rather than a supplemental petition for modification of custody [in violation of] Fla. R. Fam. P. 12.110[]." The trial court considered itself bound to this result by the language of the rule and our recent explication of it in Braswell v. Braswell, 935 So.2d 604 (Fla. 3d DCA 2006).

ANALYSIS
Florida Family Law Rule of Procedure 12.110 states, "The general rules of pleading in Florida Rule of Civil Procedure 1.110 shall apply to these proceedings except that proceedings to modify a final judgment in a family law matter shall be initiated only pursuant to rule 1.110(h) and not by motion." (emphasis added).
Florida Rule of Civil Procedure 1.110(h), titled "Subsequent Pleadings", states, in relevant part:
When the nature of an action permits pleadings subsequent to final judgment and the jurisdiction of the court over the parties has not terminated, the initial pleading subsequent to final judgment shall be designated a supplemental complaint or petition. The action shall then proceed in the same manner and time as though the supplemental complaint or petition were the initial pleading in the action, including the issuance of any needed process.
This rule was added to the Florida Rules of Civil Procedure in 1971 to cover situations, like the one before us, arising in divorce judgment modifications and other similar circumstances where a party seeks not to enforce the terms of a pending judgment but rather a change in the status quo. In re Florida Rules of Civil Procedure, 253 So.2d 404, 408 (Fla.1971); Hagins v. McNeal, 647 So.2d 1052, 1053 (Fla. 5th DCA 1994). Because relief different from that provided in the final judgment is the usual purpose of the proceeding, a pleading filed under Rule 1.110(h) is treated as an "initial pleading" in the case with the concomitant requirement of the filing *983 by the opposing party of an answer and defenses under Rule 1.140. In re Florida Rules of Civil Procedure, 253 So.2d at 408. Discovery, witness lists and the other ordinary accoutrements of the civil litigation process attach. Braswell, 935 So.2d at 606. Implicit in the proscriptions of the rule, especially in the family law context, is purposeful assurance that all interested parties are aware that a new proceeding with potentially serious consequences is afoot. Id. (reversing order granting Emergency Motion to Allow Minor Child to Reside with the father because no real emergency existed and the mother was deprived "of a proper proceeding by petition, with its concomitant rights to a witness list and discovery").
For these reasons, the courts of this state have been particularly diligent in enforcing the initial pleading requirement of Florida Rule of Civil Procedure 1.110(h) in dissolution judgment modification cases. In one of the more complete explications of the application of the rule in such a case, the Fifth District Court of Appeal in Hagins explained its denial of a former wife's petition for a writ of mandamus seeking to require a clerk of the circuit court to accept for filing her motion for an order approving her removal of the couple's children from the state as follows:
Rule 1.110(h) requires that the initial pleading subsequent to the final judgment "be designated a supplemental complaint or petition." This requirement stems from the fact that the post-judgment petitioner is seeking to reactivate the original case, as opposed to merely moving the court to take some action in a pending case.
Here, petitioner is seeking a change in the status quo. Should she be successful in her quest, petitioner will remove the children from this state. This is not an enforcement of the terms of the dissolution judgment, but rather is a modification of it. Admittedly the judgment contemplated that the day might come that petitioner would desire to move out of Florida and take the children with her; however, that move cannot occur without petitioner first showing a change of circumstances justifying the relocation.
Hagins, 647 So.2d at 1053. Our sister district courts of appeal similarly have recognized that the proper procedure for bringing an asserted change of circumstances to a trial court's attention in a post-dissolution controversy is by supplemental complaint or petition. See, e.g., Dep't of Revenue v. Fleet, 679 So.2d 326, 327 (Fla. 1st DCA 1996)(child support); Ventriglia v. Vaughan, 623 So.2d 836, 838 (Fla. 2d DCA 1993)(visitation). In our recent reversal in Braswell  drawing upon this line of authority  we affirmed that we are in accord with the rationale of these decisions, remarking that in change of custody litigation, "Florida law unequivocally requires that dissolution judgment modifications assert any change of circumstances in the form of a petition." Braswell, 935 So.2d at 606; Hagins, 647 So.2d at 1053. As we read the record, it appears that the trial court construed this remark to mean that a party's non-compliance with Florida Family Law Rule of Procedure 12.110 creates per se reversible error on appeal in this court. This is an over reading of Braswell.
Despite the mandatory connotation of the language of the rule and the compulsory tenor of the decisions which have treated it in contexts similar to ours  including especially our recent Braswell decision  we conclude that Rule 1.110(h) should not be slavishly applied. As with most rules, a litigant can waive the benefit of the rule. See De Guido v. De Guido, 308 So.2d 609 (Fla. 3d DCA 1975)(failure to include defense in avoidance of liability in answer constitutes waiver). *984 In this case, we conclude the former wife waived whatever benefit she may have obtained from the former husband's failure to strictly comply with Florida Rule of Family Law Procedure 12.110 by consenting to resolution of the motion by a general magistrate. This is so for two reasons. First, the former wife did not seek to raise or include the procedural deficiency in the referral. See Florida Family Law Rule of Procedure 12.490(b)(3)(requiring the order of referral to "state with specificity the matter or matters being referred"). See also Hand v. Kushmer, 695 So.2d 858 (Fla. 2d DCA 1997)(reiterating Florida Family Law Rule of Procedure 12.490(1)(b) that general master shall not hear any matter without an appropriate order of reference).
Second, it is well settled in this District that upon the issuance of a recommendation and the filing of exceptions thereto, the trial court's review of the record of the proceeding before a magistrate is limited to determining "whether the magistrate's factual findings and conclusions are supported by competent substantial evidence, and whether the magistrate's legal conclusions are clearly erroneous or whether the magistrate misconceived the legal effect of the evidence." Cerase v. Dewhurst, 935 So.2d 575, 578 (Fla. 3d DCA 2006). Because the procedural deficiency in question was not included in the order of referral and the record before the trial court below is bereft of any indication that the former wife challenged the form of the motion before the magistrate, there was nothing for the trial court to adjudicate in this regard under any review standard. See Anderson v. Anderson, 736 So.2d 49, 50-51 (Fla. 5th DCA 1999)(stating that in reviewing a magistrate's findings and conclusions, a trial court does not make independent findings of fact or reach independent conclusions as to the legal effect of the facts); Waszkowski v. Waszkowski, 367 So.2d 1113, 1113 (Fla. 3d DCA 1979)("[a] general master may not go beyond the matters referred to him for determination by the trial court, and . . . if a general master reports as to a matter which was not referred to him by the trial court, his report so far as it relates to that matter is a nullity").
Moreover, it is clear here that the former wife at all times has been fully aware of the nature of the proceeding and what was at stake. Although she would have us believe that the proceeding under review began when the former husband filed his Motion for Contempt and for Immediate Change of Primary Residence on June 2, 2005, it is more accurate to view the proceeding before the magistrate as a continuation of the petition initiated by the former husband more than a year earlier.[3] Compliance of that petition with Florida Family Law Rule of Procedure 12.110 is not contested. The trial court, in its February 28 order entered on the petition, found that the former husband proved one of the two elements of the "substantial change" test recently reiterated by the Florida Supreme Court as required to change custody post-dissolution. See Wade v. Hirschman, 903 So.2d 928, 931 n. 2 (Fla. 2005)("[T]he movant [seeking modification of custody] must show both that the circumstances have substantially, materially changed since the original custody determination and that the child's best interests justify changing custody."); Bazan v. Gambone, 924 So.2d 952, 955 (Fla. 3d DCA 2006)(applying Wade). The court simply felt at the time that "a modification of custody would [not] be in the best interest *985 of the child at this time." (emphasis added). The trial court further warned the former wife, "That may change in the future" (emphasis added). In the former husband's motion, the future simply had arrived.
Finally, we are aware of no case that countenances such an eleventh-hour objection to a procedural requirement of this type, especially in a family context. Unlike this case, in Hagins, Fleet and Braswell, the objections were made at the outset of the proceeding. Hagins, 647 So.2d at 1053; Fleet, 679 So.2d at 327; Braswell, 935 So.2d at 605. In Hagins and Fleet, the objector was granted relief and the petitioner properly refiled. Hagins, 647 So.2d at 1053; Fleet, 679 So.2d at 327. In Braswell, we reversed on other grounds. Braswell, 935 So.2d at 606 (holding that the trial court abused its discretion when it treated the father's motion as an emergency). In Ventriglia, the former husband contested the nature of the proceeding throughout, and the court of appeal ultimately reversed on both procedural and substantive grounds. Ventriglia, 623 So.2d at 838.
The reasoning of these cases is consistent with the well-settled law in this District that custody cases are not to be decided "on a default basis or by `gotcha' practices." Busman v. Dep't of Revenue, 905 So.2d 956, 958 (Fla. 3d DCA 2005)(expressing this court's `aversion' to having issues of parental rights decided on a default basis); see also B.H., Sr. v. Dep't of Children Families, 882 So.2d 1099, 1100 (Fla. 4th DCA 2004)("Custody and termination of parental rights should never be determined on a default basis or by `gotcha' practices when a parent makes a reasonable effort to be present at a hearing and is delayed by circumstances beyond his control."); S.C. v. Dep't of Children Families, 877 So.2d 831, 833 (Fla. 4th DCA 2004)("Custody and dependency should not be decided by "gotcha" practices when a parent makes a reasonable effort to be present at a hearing and is delayed by circumstances beyond his or her control"). A careful review of the record in this case strongly suggests that the exception asserted in this case falls into the "gotcha" tactic category. We again express our disdain for such litigation tactics.
For these reasons, we reverse the order affirming exceptions to the report of the general magistrate and remand for approval of the general magistrate's report, which determined the former husband should be the primary custodian of the child.
Reversed and remanded with directions.
NOTES
[1] We have jurisdiction pursuant to Fla. R.App. P. 9.130(a)(3)(C)(iii); Cerase v. Dewhurst, 935 So.2d 575 (Fla. 3d DCA 2006); Christ v. Christ, 939 So.2d 256 (Fla. 1st DCA 2006).
[2] For example, at the beginning of the June 7 hearing, the magistrate made clear to the former husband in the presence of the former wife: "[T]he most serious step that I would ever have to take, [Mr. Cuartas], or that I have to take, and that is to change custody. And that's what you're asking me to do; is that correct?" The former husband replied, "Yes, ma'am."
[3] In fact, the former wife in her exceptions admitted, "It is important to note that the Petitioner/Former-Husband previously attempted to modify custody via petition and now has attempted a change of custody via motion."