IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

ANGELA CLARK, FORMER
WIFE,

      Appellant,

v.

MICHAEL E. CLARK,
FORMER HUSBAND,

      Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-2241

_____/

Opinion filed December 1, 2016.

An appeal from the Circuit Court for Escambia County.
Jan Shackelford, Judge.

H. E. Ellis, Jr. of Staples, Ellis, and Associates, P.A., Pensacola, for Appellant.

Ross A. Keene of Ross Keene Law, P.A., Pensacola, for Appellee.

WETHERELL, J.

      The Former Wife appeals an order terminating the Former Husband's alimony

obligation and finding that the Former Wife received alimony overpayments

amounting to $60,000. For the reasons that follow, we reverse.

The parties' marriage was dissolved in 2006. The final judgment required the Former Husband to pay the Former Wife $1000 per month in permanent periodic alimony, which was automatically deducted from his paycheck pursuant to an income deduction order (IDO). In February 2011, after the Former Husband filed a petition to modify or terminate his alimony obligation, the parties entered into a Mediation Settlement Agreement (MSA) in which they agreed: the Former Husband would make two lump sum payments[1] of $17,500 each to the Former Wife for retroactive retirement and child support; the IDO would be replaced with a qualified domestic relations order (QDRO) pursuant to which the Former Wife would receive 36% of the Former Husband's military retirement and disability payments; and the Former Husband's alimony obligation was "terminated effective immediately."

Shortly after the MSA was executed, the Former Husband filed a motion to set it aside. In June 2012, the trial court denied the motion to set aside the MSA and entered a separate order stating: "[T]he Court . . . hereby accepts as a Final Agreement the [MSA]." The Former Husband appealed the orders to this court, but he voluntarily dismissed the appeal. See Case No. 1D12-3239 (dismissed Sept. 28, 2012).

---

[1] The first payment was to be made within 30 days of signing the MSA; the second payment within 60 days.

There was no further record activity until November 2015, when the Former Husband reopened the case and filed a motion to establish an overpayment credit. The motion alleged that the June 2012 orders "incorporated" the MSA and sought to terminate the IDO and require the Former Wife to repay all of the alimony she received pursuant to the IDO since the MSA was signed. The motion was served by email and hand delivery on the attorney who represented the Former Wife in the proceedings that culminated with the dismissal of the Former Husband's appeal. A paralegal in the attorney's office promptly sent an email to the Former Husband's attorney and the trial court's judicial assistant advising them the firm "ha[s] not represented [the Former Wife] in some time." The judicial assistant directed the Former Husband's attorney to provide a copy of the motion and notice of hearing directly to the Former Wife.

Although the Former Husband's attorney claimed that he mailed a copy of the overpayment motion to the Former Wife as directed by the judicial assistant, the limited record provided to this court reflects that the only documents served on the Former Wife were the notice scheduling a hearing on the motion for February 16, 2016, and the Former Husband's motion to appear at the hearing telephonically. According to the certificates of service, these documents were mailed to the Former Wife at an address in South Carolina on February 2 and 5, 2016, respectively.[2]

_____

[2] The certificates of service also reflect that the documents were emailed and hand

3

However, according to a sworn affidavit filed by the Former Wife, she had not lived at that address since January 2014, and she moved back to Pensacola, Florida, in March 2015.

The Former Wife asserted in her affidavit that she first became aware of the Former Husband's overpayment motion on February 10, 2016, when her former attorney contacted her and asked whether she had been served with the motion and notice of the hearing scheduled for the following week. The Former Wife immediately re-hired her former attorney who filed a notice of appearance and an objection to the notice of hearing that same day. The objection argued, among other things, that the Former Wife had not been properly served because the motion was a supplemental proceeding that required service of process. The Former Husband filed a response to the objection in which he argued that service of process was not required because the overpayment motion was merely a post-dissolution motion— and not a supplemental proceeding—and that the Former Wife's attorney had been aware of the motion since November 2015. On February 12, 2016, the trial court sent an email to the parties stating that the hearing would go forward on February 16, as scheduled.

On the day of the hearing, the Former Wife filed a response in opposition to the overpayment motion. The response requested a continuance of the hearing based

delivered to the Former Wife's former attorney.

on the inadequacy of the notice provided to the Former Wife and the need for additional time to conduct discovery and prepare for the hearing. Additionally, the response raised several "affirmative defenses" to the motion including breach of the MSA by the Former Husband, equitable estoppel, and waiver.

At the outset of the hearing, the Former Wife again raised the issue that she had not been properly served. The trial court rejected this argument, reasoning that "the only service that's necessary is by mail to the last known address or to the attorney" because the Former Husband's motion was "not a supplemental petition to modify." The court also denied the Former Wife's motion for a continuance.

Thereafter, the trial court heard evidence and argument on the merits of the overpayment motion. Although both parties acknowledged the existence of the MSA, their testimony established that they have not adhered to its terms. For example, even though the MSA terminated the Former Husband's alimony obligation "effective immediately," the Former Wife testified that she was still receiving $1000 per month in alimony pursuant to the IDO. Likewise, even though the MSA required the Former Husband to make the two lump sum payments to the Former Wife totaling $35,000, when he was asked whether he made those payments, he responded: "Not that I recall." Additionally, there was no evidence that the QDRO required by the MSA was ever entered.

At the conclusion of the hearing, the trial court orally ruled that the Former Husband was entitled to a $60,000 "overpayment credit" for the 60 months of alimony he paid pursuant to the IDO between the date of the MSA and the date of the hearing. The court also "terminate[d] any further payment of alimony" by the Former Husband. Finally, the court retained jurisdiction to address the remedy for the overpayment and any offsets due to the Former Wife.

After these rulings were memorialized in a written order, the Former Wife timely filed a notice of appeal. The Former Wife raised six issues in her brief, two of which require reversal.

First, because the Former Husband sought to change the status quo by terminating his alimony obligation, the motion was effectively a modification proceeding that could not be initiated by motion. See Cuartas v. Cuartas, 951 So. 2d 980, 983 (Fla. 3d DCA 2007) (citing Fla. R. Civ. P. 1.110(h); Fla. Fam. L. R. P. 12.110). Instead, the proceeding had to be initiated by a supplemental petition with proper service of process. See Fla. Fam. L. R. P. 12.070(a); Cuartas, 951 So. 2d at 983 ("Implicit in the proscriptions of [Rule 1.110(h)], especially in the family law context, is purposeful assurance that all interested parties are aware that a new proceeding with potentially serious consequences is afoot."); Stickney v. Stickney, 377 So. 2d 187, 188 (Fla. 1st DCA 1979). The Former Husband's argument that a supplemental petition was not required because he was only seeking to "implement"

6

the provision in the MSA terminating his alimony obligation is based on the mistaken premise that the trial court had jurisdiction to enforce the MSA. It did not. The June 2012 order "accept[ing]" the MSA as the parties' "final agreement" did not reserve jurisdiction to enforce the MSA, nor did it incorporate the MSA into an enforceable final judgment. Cf. Paulucci v. Gen. Dynamics Corp., 842 So. 2d 797, 803 (Fla. 2003) ("[W]hen a court incorporates a settlement agreement into a final judgment or approves a settlement agreement by order and retains jurisdiction to enforce its terms, the court has the jurisdiction to enforce the terms of the settlement agreement . . . .").

Second, even if the proceeding could have been initiated by motion, the trial court abused its discretion in denying the Former Wife's motion for a continuance of the hearing on the motion because the record reflects the Former Wife did not have adequate time to prepare for the hearing since she did not even receive notice of the proceeding until the week before the hearing. See Walker v. Walker, 80 So. 3d 1128 (Fla. 4th DCA 2012) (quoting Kosch v. Kosch, 113 So. 2d 547, 550 (Fla. 1959)) ("Due process requires that the party against whom relief is sought have 'reasonable notice which affords an opportunity to be heard.'"); Conner v. Conner, 800 So. 2d 724, 725 (Fla. 2d DCA 2001) (citing Harreld v. Harreld, 682 So. 2d 635, 636 (Fla. 2d DCA 1996)) ("Due process requires actual notice and time to prepare."). It does not matter that the motion was served on the Former Wife's attorney in

7

November 2015 because the paralegal made clear that the attorney did not represent the Former Wife at the time, and by operation of law, the attorney was no longer the attorney of record for the Former Wife after the completion of the proceeding culminating in the dismissal of the Former Husband's appeal in 2012. See Fla. R. Jud. Admin. 2.505(f)(3) (providing that the appearance of an attorney for a party shall terminate "[a]utomatically, without order of court, upon the termination of a proceeding . . . ."); Fla. Fam. L. R. P. 12.040(b) (requiring court approval for an attorney to withdraw "[p]rior to the completion of a family law matter").

Accordingly, the order on appeal is REVERSED.[3]

B.L. THOMAS and M.K. THOMAS, JJ., CONCUR.

---

[3] This disposition is without prejudice to either party filing an appropriate motion to incorporate the MSA into a final judgment so that it can be enforced and all of its terms can be given effect.